# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| Community Finance Group, Inc a Minnesota Corporation and Andrew Vilenchik an individual | Civil Action No. |
| Plaintiff, | |
| vs. | **COMPLAINT** |
| Republic of Kenya, Kenya Revenue Authority Department of Customs, and Kenya Central Bank, | |
| Defendants. | |

Comes now Community Finance Group, Inc. (hereinafter "CFG"), a Minnesota corporation, and Andrew Vilenchik, by and through the undersigned counsel, and complain of the defendants as follows:

## PARTIES AND JURISDICTIONAL STATEMENT

1.  Plaintiff, Community Finance Group is a Minnesota corporation with its principal office located at 5747 West Broadway, Crystal, Minnesota.

2.  Plaintiff Andrew Vilenchik is a natural person and a citizen of the United States and of the District of Columbia, with a principal office located at 5747 West Broadway, Crystal, Minnesota.

3.  Defendant Republic of Kenya is a foreign state subject to US jurisdiction under 28 U.S.C. section 1605 (a)(3).

4.  Defendant Kenya Revenue Authority Department of Customs is a foreign state subject to US jurisdiction under 28 U.S.C. section 1605 (a)(3).

5. Defendant Kenya Central Bank is a foreign state subject to US jurisdiction under 28 U.S.C. section 1605 (a)(3).

6. Jurisdiction is properly placed in United States District Court because Plaintiffs are principally located in Hennepin County and Defendant is subject to US jurisdiction under 28 U.S.C. section 1605 (a)(3).

## STATEMENT OF FACTS

7. On November 28, 2008, 3,700 kilograms of gold were flown into Nairobi, Kenya, from the Democratic Republic of Congo (DRC).

8. A dispute arose as to origin and ownership of the gold.

9. This dispute was not resolved by February 2009.

10. The gold was seized by Kenya Customs and remained in its possession when the transactions with CFG (described below) took place.

11. The seized gold was not property of the Republic of Kenya in 2009.

12. John Saina, Kenyan Consultant for Community Finance Group (CFG) visited Kenya for business research in February 2009. He expressed an interest in purchasing raw gold.

13. Mr. Saina was contacted by a group of individuals who identified themselves as owners of a gold mine in the DRC province of Ituri in May 2009. The name of the company allegedly owning the gold mine was Great Lakes Auto Tech International Ltd. (Great Lakes).

14. On May 27, 2009, a conference call between John Saina, Paul Illunga Ngoei and Andrew Vilenchik took place. Mr. Ngoei introduced himself as a representative of the gold mine owner, Mr. Abunwasi T. Lubambura (aka Tobias) and agreed to arrange for a visit by John Saina to start verification process. Mr. Ngoei informed CFG that he had 3,700 kg of gold available for immediate sale. He also agreed on behalf of his company to allow the

purchase of an initial sample of 300 kg for the total price of $5,700,000 USD (five million seven hundred thousand US dollars).

15. On May 29, 2009, John Saina arrived at Nairobi International Airport where he was picked up by the driver of Great Lakes Auto Tech International Ltd. and was transported to a hotel.

16. On June 1, 2009 John Saina came to the office of Great Lakes Auto Tech International Ltd. where he verified the existence of the gold in the presence of Paul Illunga Ngoei, Paul Kazungu and a Customs Agent accompanied by four armed uniformed security guards from G4S, a private security firm. The Customs agent introduced herself and produced customs identification. Review took place on the third floor of the Hazina Towers parking lot. John Saina placed secondary locks on the container with gold to ensure the integrity of the content.

17. Samples were taken to the Kenyan Ministry of Mines for assaying. Gold purity was successfully verified.

18. On June 4, 2009 John Saina arrived to the office of Great Lakes attorney Cecil Miller. A conference call involving Mr. Vilenchik, Paul Kazunga, Illunga Ngoei, Abunwasi T. Lubambura and Cecil Miller took place. It was agreed that an escrow account would be established with Cecil Miller of Miller & Company in Nairobi for $350,000 (three hundred fifty thousand US Dollars) for Kenya Custom fees. Mr. Miller e-mailed a draft Escrow Agreement to Mr. Vilenchik. Mr. Vilenchik signed the agreement.

19. Mr. Vilenchik e-mailed a gold purchase contract to Mr. Miller. The contract was executed by Abunwasi T. Lubambura and witnessed by Paul Kuzungu the same day.

20. On June 11, 2009 at 4 p.m. a meeting was held at the Great Lakes office in the Hazina Towers. Andrew Vilenchik, Cary Larsen and John Saina were representing CFG while

Paul Kazunga, Paul Illunga Ngoei and Abunwasi T. Lubambura were representing Great Lakes. During the meeting, a Kenya Customs officer delivered the containers with gold previously shown to CFG. Locks placed by John Saina and customs seals had been removed without notice or explanation to CFG. Samples of gold were taken for testing at the Ministry of Mines. Boxes were sealed and numbered, customs seals were placed again. The customs agent present at the meeting introduced herself and produced customs identification and personally guaranteed her presence at CFG staff departure (planned for June 14) and assistance with logistics. Escrow was not established as Mr. Miller, who had agreed to act as an escrow agent, left Nairobi that day.

21. At 7 p.m. the same day, a meeting was held at the Norfolk hotel in Nairobi between the same parties. Great Lakes representatives persuaded CFG to pay escrow funds to the Great Lakes account # 0010028919 at CFCSTANBIC to expedite the transaction and depart from Kenya on June 14, 2009 with the gold subject to the contract.

22. On June 12, 2009 a contract was executed between CFG and Zilicon Freighters, represented by Paul Kazungu. It guaranteed timely delivery and departure of the gold in question on or before June 16, 2009 without any additional payments by CFG. Otherwise, the escrow amount of $350,000 would be completely refunded to CFG. CFG initiated a wire transfer of $350,000 to the account mentioned above.

23. On June 15, 2009 Paul Kazungu informed CFG that the wire transfer would not clear until June 16, therefore, CFG would not receive the gold until June 17.

24. On June 16, 2009 Paul Kazunga confirmed the receipt of the wire transfer upon successful transaction verification by Central Bank of Kenya and later in the afternoon showed the required confirmation of payment. He also stated that an additional document required by Kenya Customs was necessary.

25. On June 17, 2009, Mr. Kazunga informed CFG that an additional permit from the UN was necessary.

26. On Thursday, June 18, 2009 at approximately 4:30 p.m., CFG representatives met with two individuals who introduced themselves as Mr. Bowman and Mr. Lee, claiming to be Director and Assistant Director of the UN, respectively. They informed CFG that the gold came from a consignment confiscated by Kenya Customs; that the consignment contained diamonds and that CFG would be required to purchase the entire consignment, including both gold and diamonds.

27. CFG representatives were taken to and from the meeting described above by Paul Illunga Ngoei. On the way to the meeting, Mr. Illunga stated to Cary Larsen that "white people disappear in Africa all the time".

28. On Friday, June 19, CFG contacted Paul Kazunga and set up an appointment with him. When CFG representatives arrived at the Hazina Towers office, Mr. Kazunga was not there. While waiting at the office, Mr. Vilenchik noticed business cards for two companies: Great Lakes Auto Tech International, Ltd., and Solar Energy Lighting. Both Cards listed the same address and phone number, both listed Paul Kobia s CEO/Director. Mr. Vilenchik took several business cards for both companies. The receptionist noticed this action and contacted Mr. Kazungu. He called Mr. John Saina immediately asking CFG representatives to leave his office and meet him at the Intercontinental Hotel.

29. Mr. Kazungu arrived several hours later looking extremely upset. Mr. Vilenchik requested a confirmation call with the so-called Mr. Bowman, allegedly from the UN, but was given an opportunity to speak with someone whose voice did not resemble Mr. Bowman's. The person to whom Mr. Vilenchik spoke assured resolution of the gold situation by the end of the day.

30. The meeting continued. Mr. Kazunga was extremely agitated and threatened to walk away from the transaction on the pretext that business cards were removed from his office. However, when one of the cards was returned to him, he calmed down and agreed to continue working with CFG.

31. On June 22, 2009 Mr. Vilenchik, Mr. Cary Larsen and Mr. John Saina went o the UN office in Nairobi to confirm the existence of Mr. Bowman and Mr. Lee. Security guards at the UN compound confirmed that no individuals bearing these names worked at any of the UN departments.

32. CFG reported the matter and filed a complaint with the Kenya Banking Fraud Investigations Department (BFID) the same day.

33. At 8 p.m. the same day, Mr. Ngoei was apprehended by Kenya police during a meeting with the CFG representatives mentioned above and transported to BFID. A loaded 380 caliber gun was discovered on him.

34. When gun was confiscated Mr. Ngoei pointed at Cary Larsen after looking at the loaded gun and stated that it was intended for Mr. Larsen.

35. On June 23, 2009 Mr. Vilenchik, Mr. Larsen and Mr Saina filed attempted murder charges with Criminal Investigation Department (CID).

36. On June 23, 2009 Mr. Vilenchik and Mr. Saina went to Mr. Kazunga's office, accompanied by three police officers. The office was closed; no employees were at work.

37. Real identities of the individuals involved in the fraudulent scheme are as follows:

38. Illunga Ngoei is Paul Kobia, Kenyan citizen;

39. Paul Kazunga is Jared Nyagaka, Kenyan citizen;

40. Abunwasi T. Lubambura is a Tanzanian citizen.

41. On June 25, 2009 Mr. Paul Illunga Ngoei (Paul Kobia) was released on bail.

42. On June 26, 2009 CFG representatives were taken to the customs office at the Kenyatta International Airport by staff of Kenya Commissioner of Police, Major General Mohammed H. Ali. CFG representatives identified customs seals used by the Kenya Customs official on the day gold was demonstrated to CFG.

43. Kenya Customs is an agency or instrumentality of the Republic of Kenya.

44. Central Bank of the Republic of Kenya initially initiated a hold on the pending wire transfer to Great Lakes from CFG pending verification as to the nature of the wire transfer. Therefore, Central Bank of the Republic of Kenya confirmed the existence and legality of the gold sale contract at issue.

45. The vehicle used to deliver gold is a 1998 Lexus, license plate No. KAU103S, owned by Amin Mohamed Premji, owner of the Bay FOREX Bureau.

46. Bay FOREX Bureau is licensed by the Central Bank of Kenya.

47. Bay FOREX Bureau is an agency or instrumentality of the Government of Kenya.

48. Bay FOREX Bureau conducts commercial activity in the US through the US securities market.

49. Bay FOREX Bureau collaborated in a fraudulent scheme that involved false representation about the nature of a consignment of gold, its legal status and its ownership.

50. The damage inflicted upon CFG consists of $350,000.00 (three hundred thousand US Dollars) Transferred to Great Lakes, $50,000 (fifty thousand US Dollars) in various travel expenses, and $40,000,000.00(forty millions US Dollars) in lost profits.

51. Republic of Kenya is subject to US jurisdiction under 28 U.S.C. section 1605 (a)(3).

Wherefore, Community Finance Group requests such relief as the court deems just and appropriate, including, but not limited to, $40,400,000.00 (forty million four hundred

thousand US Dollars) plus attorney fees and costs as well as punitive damages in the amount of $10,000,000 (ten million US Dollars).

Dated: March 3, 2010                                **Ilya Knyazev, P.A.**

By: _____

Ilya Knyazev, Esq. (#0386824)
2025 Nicollet Ave S # 200B
Minneapolis, MN 55404
Telephone: (612) 219-6439