```
              UNITED STATES DISTRICT COURT
                 DISTRICT OF MINNESOTA
                Civil No. 10-838(DSD/JJG)
```

Community Finance Group, Inc.
and Andrew Vilenchik,

       Plaintiffs,

v.                                                  **ORDER**

Republic of Kenya, Kenya
Revenue Authority, Kenya
Department of Customs, and
Kenya Central Bank,

       Defendants.

    Boris Parker, Esq., Nicholas M. Wenner, Esq. and Parker
    & Wenner, PA, 220 South Sixth Street, Suite 1700,
    Minneapolis, MN 55402, counsel for plaintiffs.

    Clifford M. Greene, Esq., Monte Mills, Esq. and Greene
    Espel, PLLP, 200 South Sixth Street, Suite 1200,
    Minneapolis, MN 55402; Clara E. Brillembourg, Esq., Paul
    S. Reichler, Esq., Tafadzwa Pasipanodya, Esq. and Foley
    Hoag LLP, 1875 K Street N.W., Suite 800, Washington, D.C.
    20006, counsel for defendants.

       This matter is before the court upon the motion to dismiss by Republic of Kenya, Kenya Central Bank, Kenya Revenue Authority and Kenya Department of Customs (collectively, defendants). After a review of the file, record and proceedings herein, and for the following reasons, the court grants the motion.

                                    **BACKGROUND**

       This case arises out of an attempt by Community Finance Group, Inc. (CFG) and Andrew Vilenchik (collectively, plaintiffs) to

purchase gold in Kenya. In February 2009, John Saina, a United States citizen and former Kenyan national, approached Vilenchik, general manager of CFG, and informed him of an opportunity to purchase gold in Kenya. Am. Compl. ¶ 11. CFG agreed to purchase the gold and, on May 29, 2009, Saina traveled to Kenya to facilitate the transaction. Id. ¶¶ 13, 16. On June 1, 2009 in Nairobi, Kenya, the gold was delivered to Saina in a vehicle owned by the president of the Bay Forex Bureau, a licensed foreign exchange bureau. Id. ¶¶ 16-17. Saina inspected the gold in the presence of an officer from the Kenya Department of Customs, four security guards and Kenyan administrative police. Id. ¶¶ 17-18.

On June 11, 2009, Vilenchik flew to Kenya, where he met with Saina and others to verify the gold. Id. ¶¶ 22-23. An officer from the Kenya Department of Customs was present at this meeting. Id. ¶ 23. CFG wired $350,000 to the seller's bank account to cover various taxes and fees associated with transferring the gold from Kenya to the United States. Id. ¶¶ 21, 25. The transaction was verified by the Kenya Central Bank, and on June 16, 2009, the money was transferred. Id. ¶ 28. On June 17 and 18, 2009, CFG was informed that there would be delays before the gold could be released, and CFG became suspicious. Id. ¶¶ 29-32. On June 22, 2009, CFG filed a formal written complaint with the Kenya Central Bank Fraud Investigation Department (CBFID). Id. ¶ 34. An officer

of CBFID informed CFG that it was filing charges against the sellers. Id. ¶ 38. The matter remains unresolved.

On March 17, 2010,[1] plaintiffs filed this action alleging breach of duty, improper taking, conversion, conspiracy to commit a tort, aiding and abetting and unjust enrichment. On September 14, 2010, defendants moved to dismiss for lack of subject-matter jurisdiction and improper venue pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(3). The court now considers the motion.

## DISCUSSION

### I. Standard of Review

A court must dismiss an action over which it lacks subject-matter jurisdiction. Fed. R. Civ. P. 12(h)(3). In a facial challenge under Rule 12(b)(1), the court accepts the factual allegations in the pleadings as true and views the facts in the light most favorable to the nonmoving party. See Hastings v. Wilson, 516 F.3d 1055, 1058 (8th Cir. 2008); see also Osborn v. United States, 918 F.2d 724, 729 n.6 (8th Cir. 1990) ("The nonmoving party receives the same protections [for facial attacks under Rule 12(b)(1)] as it would defending against a motion brought under Rule 12(b)(6)."). The court limits its inquiry to the pleadings. Osborn, 918 F.2d at 729, n.6. The pleadings, however,

---

[1] On July 16, 2010, Plaintiffs filed an amended complaint.

include matters of public record.  Porous Media Corp. v. Pall Corp., 186 F.3d 1077, 1079 (8th Cir. 1999).

**II.  Foreign Sovereign Immunities Act**

A foreign sovereign is presumptively immune from suit in federal court under the Foreign Sovereign Immunities Act (FSIA), 28 U.S.C. §§ 1602-1611.  Unless an enumerated exception applies, federal courts lack subject-matter jurisdiction over claims against a foreign sovereign.[2]  See id. § 1604; Argentine Repub. v. Amerada Hess Shipping Corp., 488 U.S. 428, 434-35 (1989).  Once a foreign state makes a prima facie showing of immunity, the plaintiff seeking to litigate in the United States has the burden of showing that an exception applies.  See Gen. Elec. Capital Corp. v. Grossman, 991 F.2d 1376, 1382 (8th Cir. 1993).  Plaintiffs argue that the commercial activity, expropriation and tort exceptions of the FSIA apply to this action.  See 28 U.S.C. §§ 1605(a)(2), 1605(a)(3), 1605(a)(5).

   **A.  Commercial Activity Exception**

A foreign state is not immune from federal jurisdiction when the action is based "upon an act outside the territory of the United States in connection with a commercial activity of the

---

[2] Immunity applies equally to a foreign state's political subdivisions, agencies, and instrumentalities, see 28 U.S.C. § 1603, and plaintiffs do not dispute that the FSIA applies to all defendants in this action.

4

foreign state elsewhere and that act causes a direct effect in the United States." 28 U.S.C. §§ 1605(a)(2). "A 'commercial activity' means either a regular course of commercial conduct or a particular commercial transaction or act. The commercial character of an activity shall be determined by reference to the nature of the course of conduct or particular transaction or act, rather than by reference to its purpose." 28 U.S.C. § 1603(d). When a foreign state acts, "not as regulator of a market, but in the manner of a private player within it, the foreign sovereign's actions are 'commercial' within the meaning of [the FSIA]." Gen. Elec. Capital Corp., 991 F.2d at 1382 (quoting Repub. of Argentina v. Weltover, Inc., 504 U.S. 607, 614 (1992)); see also Saudi Arabia v. Nelson, 507 U.S. 349, 360 (1993) (foreign state engages in commercial activity only when it acts as private player in the market).

Plaintiffs allege that defendants failed to: (1) investigate the underlying commercial transaction to ensure it was legitimate, (2) secure the gold stored by Customs and place a hold on funds transferred by plaintiffs until the transaction could be verified, (3) investigate the criminal activity of alleged wrongdoers, and (4) turn over as restitution funds seized from alleged wrongdoers. Am. Compl. ¶¶ 54-57. These are not commercial activities. Investigation and regulation of commercial transactions are exercises of sovereign power, not acts of private players in the marketplace. See, e.g., Tucker v. Whitaker Travel, Ltd., 620 F.

Supp. 578, 584 (D.C. Pa. 1985) (investigatory and regulatory functions of sovereign state not commercial activities under the FSIA).  Criminal investigations are also purely governmental activities.  See Saudi Arabia, 507 U.S. at 361 (exercise of police power is "peculiarly sovereign in nature").  Regulation of imports and exports by the Kenya Department of Customs is an exclusively governmental activity.  See, e.g., MOL, Inc. v. Peoples Repub. of Bangladesh, 736 F.2d 1326, 1329 (9th Cir. 1984) ("Bangladesh's right to regulate imports and exports [is] a sovereign prerogative.").  Lastly, the Central Bank of Kenya is a government agency that licenses Kenyan banks and other financial institutions and controls foreign exchange.  Abuga Aff. ¶ 6.  Its ability to place holds on international wire transfers is a governmental function.  See, e.g., de Sanchez v. Banco Central De Nicaragua, 770 F.2d 1385, 1392-93 (5th Cir. 1985) (regulation and supervision of foreign exchange is sovereign activity and issuance of check falls within that category).  Therefore, the commercial activities exception does not apply.[3]

---

[3] Even if the alleged conduct was a commercial activity, the exception does not apply because plaintiffs failed to show that the conduct caused "a direct effect in the United States." 28 U.S.C. § 1605(a)(2); see Gen. Elec. Capital Corp., 991 F.2d at 1385-86 (direct effect in United States satisfied when United States is "place of performance" for obligations); United World Trade, Inc. v. Mangyshlakneft Oil Prod. Ass'n, 33 F.3d 1232, 1239 (10th Cir. 1994) (financial loss by plaintiff does not constitute direct effect in United States).

### B.   Expropriation Exception

A foreign state is not immune from jurisdiction in any case

> in which rights in property taken in violation of international law are in issue and that property or any property exchanged for such property is present in the United States in connection with a commercial activity carried on in the United States by the foreign state; or that property or any property exchanged for such property is owned or operated by an agency or instrumentality of the foreign state and that agency or instrumentality is engaged in a commercial activity in the United States.

28 U.S.C. § 1605(a)(3).

Plaintiffs argue that this exception applies because defendants improperly retained money and gold belonging to plaintiffs. Am. Compl. ¶¶ 60-63. This claim fails for several reasons. First, plaintiffs fail to show that defendants took the money or gold at issue, and plaintiffs' complaint contains no factual allegations that defendants received or retained these funds. Instead, plaintiffs voluntarily wired $350,000 to a bank account. Am. Compl. ¶¶ 24-25. Moreover, plaintiffs fail to allege that the expropriated property is present in the United States in connection with a commercial activity carried on in the United States by defendants. See 28 U.S.C. § 1605(a)(3). Further, plaintiffs do not allege that the expropriated property is "owned or operated by an agency or instrumentality of Kenya" and that

7

agency or instrumentality is engaged in a commercial activity in the United States. Id. Therefore, the expropriation exception does not apply.

### C. Tort Exception

A foreign state is not immune from jurisdiction in any case "in which money damages are sought against a foreign state for ... damage to or loss of property, occurring in the United States and caused by the tortious act or omission of that foreign state." Id. § 1605(a)(5); see Argentine Repub., 488 U.S. at 441 (exception covers only torts occurring within territorial jurisdiction of United States). Plaintiffs accuse defendants of conversion, conspiracy to commit a tort, aiding and abetting and unjust enrichment. See Am. Compl. ¶¶ 64-80. All of the alleged conduct giving rise to these claims occurred in Kenya.[4] Therefore, the tort exception does not apply, and dismissal for lack of subject-matter jurisdiction is warranted.

---

[4] The court rejects plaintiffs' argument that defendants participated in a conspiracy that originated in the United States, as the amended complaint contains no factual allegations to support this argument.

**CONCLUSION**

Accordingly, based on the above, **IT IS HEREBY ORDERED** that defendants' motion to dismiss [ECF No. 24] is granted.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:  March 15, 2011

s/David S. Doty
David S. Doty, Judge
United States District Court
